UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80271-CIV-MARRA

IN RE:

PALM BEACH FINANCE PARTNERS, L.P.,
and PALM BEACH FINANCE II, L.P.,

      Debtors.

_____/

BARRY E. MUKAMAL, in his capacity as
Liquidating Trustee of the Palm Beach
Finance Partners Liquidating Trust,

      Plaintiff,

vs.

KBC FINANCIAL PRODUCTS (Cayman Islands)
Ltd. and AGILE SKY ALLIANCE FUND, LP,

      Defendants.

_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Defendant KBC Financial Products (Cayman

Islands) Ltd.'s ("KBC") Motion for Withdrawal of the Reference for Trial and, After Report and

Recommendation by the Bankruptcy Court (DE 1).  Plaintiff Barry E. Mukamal, Trustee ("the

Trustee") has filed a response to the Motion, and KBC has filed a reply.  The Court has carefully

considered the briefs and is otherwise fully advised in the premises.

### I. Background

This matter arises out of the Chapter 11 Voluntary Petition for Bankruptcy filed by Palm

Beach Finance Partners, L.P. on November 30, 2009.  Case No. 09-BKC-376379-PGH, DE 1.

On November 17, 2011, Barry E. Mukamal, the Trustee for the Palm Beach Finance Partners Liquidating Trust ("Trustee"), filed thirteen adversary proceedings Defendant KBC Financial Products (Cayman Islands) ("KBC").[1]  These claims seek to "claw back" from KBC and other defendants a total of $126,298,682.04 by seeking to avoid constructively fraudulent transfers. Motion at 8.

Defendant KBC moves this Court to withdraw the reference of the adversary proceedings before the United States Bankruptcy Court for the Southern District of Florida.  In its Motion, KBC asserts that bankruptcy courts lack the constitutional authority to adjudicate either fraudulent transfer or unjust enrichment claims, both of which are raised in the underlying proceedings.  KBC does not move for the immediate withdrawal of the reference; rather, KBC asks the Court to withdraw the reference after the bankruptcy court renders a disposition of all dispositive motions in this Adversary Proceeding.  Plaintiff opposes such relief, asserting that bankruptcy courts do have the authority to render final judgments on claims of fraudulent transfer and unjust enrichment.  Both parties rely on different interpretations of the Supreme Court's recent ruling in Stern v. Marshall, 131 S.Ct. 2594 (2011).

## II.  Discussion

Congress has divided bankruptcy proceedings into three categories: (1) those that arise under title 11; (2) those that arise in title 11; and (3) those that are related to a case under title 11. See Stern v. Marshall, 131 S.Ct. 2594, 2603 (2011) (citing § 157(a)).  "District courts may refer all such proceedings to the bankruptcy judges of their district, and bankruptcy courts may enter

---

[1] Each of the thirteen adversary proceeding names KBC as a Defendant, but eight of the proceedings also name a second defendant.

final judgments in 'all core proceedings <u>arising under</u> title 11, or <u>arising in</u> a case under title 11.' " <u>Id.</u> (quoting §§ 157(a), (b)(1)) (emphasis supplied).  Congress has articulated 16 specific types of proceedings that are considered to be "core proceedings" in which bankruptcy courts are statutorily authorized to render final judgments.  <u>See id.</u> (citing §§ 157(b)(1)-(2)).  "Parties may appeal final judgments of a bankruptcy judge in core proceedings to the district court, which reviews them under traditional appellate standards."  <u>Id.</u> at 2603-04.  If a bankruptcy judge determines that a proceeding is "not a core proceeding, but . . . otherwise related to a case under title 11," then that judge may only "submit proposed findings of fact and conclusions of law to the district court."  § 157(c)(1).  In those matters, "[i]t is the district court that enters final judgment . . . after reviewing *de novo* any matter to which a party objects."  <u>Stern</u>, 131 S.Ct. at 2604 (citing § 157(c)(1)).

<u>Stern</u> involved a tortious interference counterclaim that the bankruptcy court determined to be a "core proceeding" as defined by § 157(b)(2)(C).  <u>See id.</u> at 2611.  After determining it had jurisdiction over the matter, the bankruptcy court rendered a final judgment on the state law counterclaim.  <u>See id.</u> at 2600.  The Supreme Court determined that the bankruptcy court had the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on the state law counterclaim, but that it was a violation of Article III of the United States Constitution for Congress to confer that authority upon the bankruptcy court.  <u>See id.</u>  The Supreme Court ultimately held:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article.  We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984.  <u>The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that</u>

is not resolved in the process of ruling on a creditor's proof of claim.
Accordingly, the judgment of the Court of Appeals is affirmed.

Id. at 2620 (emphasis supplied).

The Supreme Court also made clear that it did not intend its decision in Stern to have

broad implications:

As described above, the current bankruptcy system also requires the
district court to review de novo and enter final judgment on any matters that are
"related to" the bankruptcy proceedings, § 157(c)(1), and permits the district court
to withdraw from the bankruptcy court any referred case, proceeding, or part
thereof, § 157(d).  Pierce has not argued that the bankruptcy courts "are barred
from 'hearing' all counterclaims" or proposing findings of fact and conclusions of
law on those matters, but rather that it must be the district court that "finally
decide[s]" them.  We do not think the removal of counterclaims such as Vickie's
from core bankruptcy jurisdiction meaningfully changes the division of labor in
the current statute; we agree with the United States that the question presented
here is a "narrow" one.

Id. at 2602 (emphasis supplied).

In short, the Supreme Court limited, in at least one respect, the ability of bankruptcy

courts to render final judgments.  Nothing in the Stern decision, or any other decision, has limited

the ability of bankruptcy courts to issue reports and recommendations in all matters that have

been properly referred to the bankruptcy court.  The Court acknowledges that there is a decisional

split with regard to whether fraudulent conveyance claims may be adjudicated by bankruptcy

courts, but even those courts that have held bankruptcy courts lack jurisdiction over fraudulent

conveyance claims have held that bankruptcy courts are still permitted to issue reports and

recommendations on such claims.  See, e.g., Heller Ehrman LLP v. Arnold & Porter LLP, 464

B.R. 348, 352 ( N.D. Cal. 2011) (holding that bankruptcy courts cannot enter a final judgment in

fraudulent conveyance claims, but that withdrawal of the reference is not required).

The Court finds the decision of the Southern District of New York in In re Extended Stay, Inc., 466 B.R. 188 (2011), to be persuasive here.  That decision provided:

> In holding that Stern does not mandate withdrawal of these five actions, I do not reach the issue of how Stern applies to each of the 125 claims at issue.  The bankruptcy court is capable of making that determination initially, subject to de novo review by this Court.  In the event that the bankruptcy court does not have constitutional authority to enter a final judgment on certain claims, it may submit proposed findings of fact and conclusions of law to this Court.  Withdrawing the reference simply due to the uncertainty caused by Stern is a drastic remedy that would hamper judicial efficiency on the basis of a narrow defect in the current statutory regime identified by Stern.  Neither the Supreme Court nor most of the courts to consider Stern have given it the expansive effect advocated by plaintiffs.  Accordingly, Stern does not provide a basis independent of section 157(d) for mandatory withdrawal in these five actions.

Id. at 203.  This Court agrees with the sound reasoning of the Southern District of New York.  The Bankruptcy court can, and should, initially determine whether it has the constitutional authority to render a final judgment on a particular issue.  The Court will review the specific legal question of constitutional authority de novo, and if the Court determines that the bankruptcy court erred in rendering a final judgment, it will simply treat the Court's "decision" as a report and recommendation.  See In re Rothstein, Rosenfeldt, Adler, P.A., 2012 WL 82700 (S.D. Fla. March 9, 2012).  This conclusion is consistent with the Southern District of Florida's recent Administrative Order 2012-25.

Here, the Court elects not to exercise its discretion to withdraw the reference at this time.  However, the Court notes that nothing in this Order shall be construed to preclude KBC from re-filing a motion to withdraw the reference should it exercise its Seventh Amendment right to a jury trial by an Article III Court.  Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that Defendant KBC Financial Products (Cayman

5

Islands) Ltd.'s Motion for Withdrawal of the Reference for Trial and, After Report and Recommendation by the Bankruptcy Court (DE 1) is **DENIED WITHOUT PREJUDICE**.  The Bankruptcy Court **REFERENCE IS AFFIRMED**.  The Clerk shall **CLOSE** this case and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of June, 2012.

_____

KENNETH A. MARRA
United States District Judge

6